UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

MICHAEL P. MAXWELL
*Trustee of Ajigunwa Adefunmi*,

        Appellant,

        v.                                      Case No. 08-C-1031

GLADYS JEAN JOHNSON,

        Appellee.

DECISION AND ORDER
REVERSING AND REMANDING THE DECISION OF THE BANKRUPTCY COURT

This appeal arises from an adversary proceeding filed by the Chapter 7 bankruptcy trustee seeking to recover an insider preference of $11,000 from the debtor's mother-in-law, Gladys Jean Johnson. (Doc. 1-14.) The bankruptcy court concluded that the trustee established that Johnson received a preference and that he was entitled to partial relief in the sum of $3,389.02 under 11 U.S.C. § 547(b). The bankruptcy court further found that Johnson failed to sustain any applicable defenses to recovery of that preference under 11 U.S.C. § 547(c). The trustee filed a timely notice of appeal under 28 U.S.C. § 158 (c)(2) and Fed. R. Bankr. P. 8002(a). His brief and appendix, which include relevant portions of the record, are now before this court; however, Johnson has failed to appear or file any documents in connection with this appeal.

Federal district courts have jurisdiction to hear appeals from bankruptcy court rulings. 28 U.S.C. § 158. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard; the bankruptcy court's legal findings are reviewed under the de novo standard. *Wiese v. Community Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). When there are mixed questions of law and fact,

the district court conducts a de novo review. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008).

The trustee argues that the court erred in applying the earmarking doctrine and reducing his preference recovery to $3,389.02. Section 547(b) of the bankruptcy code allows a trustee to avoid the transfer of a debtor's interest in property to a creditor if the transfer took place shortly before the bankruptcy and enabled the creditor to recover more than the creditor would have recovered in the bankruptcy case. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001).

For a transfer to be preferential, five elements are necessary: the transfer was (1) made to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) while the debtor was insolvent; (4) on or within 90 days before the petition date or between ninety days and one year before the petition was filed if the creditor at the time of such transfer was an insider; and (5) allowed the creditor to receive more than he otherwise would have if the case were a case under chapter 7 and the transfer had not been made. 11 U.S.C. § 547(b); *see Warsco*, 258 F.3d at 564. The trustee has the burden of proving each of these elements. *Warsco*, 258 F.3d at 564.

The bankruptcy court found that the trustee did not establish that there was a "transfer of an interest of the debtor in property" as to the entire $11,000 he was seeking to recover from Johnson. (Doc. 1-18, p. 1.) However, in explaining that the trustee was entitled to recover part of the debtor's payment to Johnson, the court noted that Johnson testified that she provided money for the debtor, her son-in-law, to hold in his account for the purpose of showing a potential lender that he had access to liquid funds. (Doc. 1-18, p. 2.) Also, Johnson further testified that the money was moved into the debtor's account

2

for a month and then "he gave them back." (*Id.*) According to Johnson, the money was not a loan, but her money that was being returned to her.

In arriving at its decision, the bankruptcy court found that the debtor did not transfer property belonging to him "because Johnson's funds were placed in the Debtor's bank account for a specific purpose with the understanding that the funds would be returned after that purpose was served." (*Id.*) In addition, the bankruptcy court cited the earmarking doctrine, which "contemplates that the debtor's creditors are not harmed by the transaction, because one creditor is substituted for another, and the net to the debtor's other creditors remain the same." (*Id.*) Continuing, the bankruptcy court ruled that "the same result would have occurred with this transaction as the receipt and return of the same $10,000 would not have increased or decreased the amount available for unsecured creditors." (*Id.*) The bankruptcy court further found that the debtor did not retain all of Johnson's $10,000 throughout the month stating:

> Specifically, on April 19, 2007, the combined balance of the Debtor's checking and savings accounts was only $6,610.98. Therefore the Debtor spent $3,389.02 of the funds advanced by Ms. Johnson to make other purchases or meet his obligations. By spending a portion of Ms. Johnson's money, it is apparent that those funds were converted to the Debtor's own use, and ceased to be Ms. Johnson's. Therefore, the Trustee has satisfied the elements of a preference as to $3,389.02.

(Doc. 1-18, p. 3.) The court went on to avoid the transfer of $3,389.02 from the debtor to Johnson and entered judgment for that amount without fees or costs.

The Seventh Circuit Court of Appeals has defined "transfer of an interest of the debtor in property" by examining whether the debtor was able to exercise sufficient dominion and control over the funds to demonstrate an interest in property. *In re Matter*

3

*of Smith*, 966 F.2d 1527, 1531 (7th Cir. 1992). According to the Seventh Circuit, the general rule is that a debtor's transfer of borrowed funds is a preferential transfer of the debtor's property under section 547(b) assuming the other elements of that section are met. *Id.* On the other hand, when a third party lends money to the debtor for the specific purpose of paying a selected creditor, the borrowed funds do not constitute a preference if the loan is conditioned on payment of the designated creditor and the creditor is, in fact, paid. *Id.*, 966 F.2d at 1533. In such an instance, the funds are said to be "earmarked" for the creditor in question and never become property of the debtor. *Id.* The transfer is not preferential inasmuch as the debtor never exercises control over the new funds, and the debtor's property-the fund out of which existing creditors can be paid-is not diminished. *Id.*

After careful review of the record, there is no dispute that Johnson withdrew $10,000 from her TCF National Bank account and gave the debtor a cashier's check in that amount. (Doc. 1-21, Ex. 1; 1-33, p. 5.) The check was deposited into the debtor and his wife's joint Guardian Credit Union account on March 30, 2007; $8,000 was deposited into the savings account and $2,000 was deposited into the classic checking account. (Doc. 1-21, Ex. 4.) These funds remained in the respective accounts for approximately thirty days and were partially used by the debtor to show a lending institution in Indiana that he had at least $10,000 in his account.[1] (Doc. 1-33, pp. 35, 40-41.) However, the debtor had access to and control over the entire $10,000, and these monies were partially spent after deposit into the credit union account. (Doc. 1-33, pp. 36-38, 44.)

---

[1] In doing this it is apparent that Adefunmi commingled these funds with the existing balances then on hand and who represented to the lender that these were his personal funds.

4

One portion of the joint account ending in -668 (checking) started at $10,356 and was drawn down to a low point of $1,497.13 by April 18, 2007, due to various transfers between the savings and checking portions of the accounts. (*Id.*) With respect to the transfers, the debtor testified that he "spent down" the account but that he "got the return from the real estate transaction" and "built it back up and returned" the money to Johnson. (Doc. 1-33, p. 40.)

There is no dispute that the account was used continuously through the month. (Doc. 1-33, p. 47.) The debtor testified that the funds were used for ordinary expenditures, including mortgage payments. (Doc. 1-33, pp. 48-49.) Moreover, he was able to repay Johnson after receiving funds from a business partner, Mr. Joiner. (Doc. 1-33, pp. 49-50.)

The debtor paid Johnson $11,000 on May 1, 2007, with a check from the Guardian Credit Union account. (Doc. 1-21, Ex. 3.) Further, that $11,000 repayment was never listed in the debtor's Statement of Financial Affairs as a potential insider preference. (Doc. 1-21, p. 84; 1-33, p. 30.) Notably, Johnson did not know what the debtor did with the $10,000, but assumed that he would put it in his bank account. (Doc. 1-33, p. 8.) Also, Johnson did not charge interest for the use of the money; however, when the debtor paid her $10,000 plus an additional $1,000 to pay toward a credit card balance that the debtor's wife had transferred to Johnson's card. (Doc. I-33, p. 14, 43.)

These were not earmarked funds. The funds were comingled with other monies in Adefunmi's joint account, and, at any point, he could have paid other creditors with the funds. Adefunmi admitted that he "spent" his accounts down by paying for ordinary expenditures – including a mortgage payment – before repaying Johnson with

5

funds that he obtained from another source. He even represented these funds as his own to a potential lender. Johnson loaned funds to the debtor, never conditioned the loan on the payment of a designated creditor and the only agreement between Johnson and the debtor was a verbal understanding that the debtor would repay Johnson within thirty days. Consequently, this court finds that the bankruptcy court was clearly erroneous when it decided that there was no transfer of an interest of the debtor in property except for $3,389.02. Now, therefore,

IT IS ORDERED that the October 22, 2008, order is reversed and this case remanded for further proceedings consistent with this decision.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE